**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 96-30191

(Summary Calendar)
_____

JESSICA MATTE DUPUIS, individually and on
behalf of Samantha Nicole Dupuis on behalf of
Mark Logan Dupuis,

                              Plaintiff-Appellant,

versus

JOHN TOLEDO, ET AL.,

                              Defendants,

JOHN TOLEDO, individually and as Police
Officer of the Town of Krotz Springs; POLICE
DEPARTMENT OF KROTZ SPRINGS; TOWN OF KROTZ
SPRINGS; MARVIN GUILLORY, Acting Chief of
Police of Krotz Springs; TITAN INDEMNITY
COMPANY; GARY SOILEAU,

                              Defendants-Appellants.

_____

Appeal from the United States District Court
For the Western District of Louisiana
(94-CV-2383)
_____

June 9, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Plaintiff Jessica Matte Dupuis, proceeding on her own behalf and that of her two minor children, appeals the jury's verdict that Defendants did not violate the civil rights of Adolph Dupuis IV and were not liable under Louisiana law for his death. Plaintiffs also appeal the district court's exclusion of evidence regarding the background of Defendant John Toledo and the district court's denial of Plaintiffs' motion for a new trial. We affirm.

I

On the night of December 2, 1994, Adolph ("Jody") Dupuis IV went out with his wife Jessica in the town of Krotz Springs, Louisiana. During the course of the evening, the couple engaged in an argument regarding allegations of Jessica's infidelity. At 2:00 a.m. on the morning of December 3, Jody and Jessica returned home from Dago's Bar, a drinking establishment run by Jody's "uncle," James Kemp. Jody left the house.

Shortly thereafter, Krotz Springs Police Officer John Toledo, who was at a 24-hour grill and service station, received a phone call complaining that Jody was driving unsafely. Jessica had called the police because she was worried about Jody. As Toledo left the station, he saw Jody's vehicle across the street and went to investigate. After a brief discussion, Toledo escorted Jody home.

Jessica and Jody had another argument, after which Jessica left the house. Upon leaving, she told Jody to find her if he wanted to speak with her. Jessica drove to the service station

-2-

where Toledo had returned to eat. At the station, Jessica told Toledo that she was having an argument with Jody, that Jody had smashed furniture, and that Jody was barricaded in their house with a shotgun. Toledo then proceeded towards his squad car to radio for assistance.

As Toledo left the station, Jody arrived and approached Toledo. Toledo instructed Jody to stop advancing, but Jody did not. Toledo pulled out his pepper spray and sprayed it towards Jody's face. Toledo backpedaled, but Jody continued to advance. Toledo again discharged his pepper spray in Jody's face. Observing that the spray had had little effect on Jody, Toledo drew his baton while retreating. The baton was knocked from Toledo's hand during the struggle. As Jody struggled with Toledo, he forced Toledo to the pavement. Toledo drew his sidearm and fired twice into Jody's chest. Jody died several hours later at Opelousas General Hospital.

After trial in December 1995, the jury returned a verdict finding no violation of Jody's civil rights and no negligence under Louisiana law by any of the defendants. Plaintiffs appeal.

II

Plaintiffs present four arguments on appeal: that the jury's verdict that Defendants did not violate Jody's civil rights is contrary to the weight of the evidence; that the jury's verdict that Defendants were not negligent under Louisiana law is contrary to the weight of the evidence; that the district court erred in

excluding evidence regarding Toledo's background; and that the district court erred in denying Plaintiffs' motion for a new trial.

Plaintiffs first argue that the jury's conclusions that Defendants did not violate Jody's civil rights and that Defendants were not negligent under Louisiana law are contrary to the weight of the evidence.[2] Plaintiffs appear to argue that Toledo's use of the pepper spray, despite an acknowledged lack of training in its use, compels a finding of excessive use of force and negligence by Toledo.

In reviewing the sufficiency of the evidence to support a jury verdict, we consider all of the evidence, drawing all reasonable inferences in favor of the prevailing party. *Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1178 (5th Cir. 1992). We do not reweigh the evidence; it is the jury's province to weigh conflicting evidence, draw inferences from the evidence, and make credibility determinations. *Id.* Nor can a jury verdict be set aside merely because a different result could have been reached; its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict. *Id.* Substantial evidence, while something less than the weight of the evidence, is such relevant evidence as reasonable minds might accept as adequate to support a conclusion, even if different

_____

[2]     Although Plaintiffs frame their arguments as appeals of the jury's findings that Defendants did not violate Jody's civil rights and were not negligent in Jody's death, Plaintiffs specifically contest only the jury's conclusions that Toledo did not use excessive force and was not negligent.

-4-

conclusions also might be supported by the evidence. *Id.*

Based on this narrow standard of review, we find Plaintiffs' challenges to the verdict without merit. Toledo testified that Jody attacked him, that he attempted and was unable to escape, and that he unsuccessfully attempted to subdue Jody through the use of his pepper spray and his baton. Toledo testified that he shot Jody as a "last resort" because he felt that his life was in danger.

Witnesses to the incident confirmed Toledo's testimony. James Kemp testified that at the time of the shooting Jody was bent over Toledo, reaching for him. Bobby Edwards testified that Jody was standing over Toledo within reaching distance at the time of the shooting. Myra Ponthieux stated that just prior to the shooting Jody was "going over" and was "right over" Toledo. Robert Walker testified that Toledo was falling backwards and was in Jody's grasp at the time of the shooting. Walker stated that it appeared to him that Toledo was in danger of being harmed by Jody.

In addition, an expert in police training in the use of chemical weapons testified that Toledo used the pepper spray properly despite his lack of training. The expert testified that under the same circumstances he would have used the spray in the same manner Toledo did. Based on the foregoing and drawing all reasonable inferences in favor of Defendants, we conclude that the record contains competent and substantial evidence tending fairly to support the jury's verdict that Defendants did not violate

Jody's civil rights and were not negligent.

Plaintiffs next argue that the district court erred in excluding evidence regarding Toledo's background. We review a district court's evidentiary rulings for abuse of discretion. *Herrington v. Hiller*, 883 F.2d 411, 414 (5th Cir. 1989). We will not overturn evidentiary rulings unless substantial prejudice results. *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990). The party asserting error has the burden of proving that the error prejudiced a substantial right of that party. *Id.*

Plaintiffs sought to introduce Toledo's former employment and criminal records showing that Toledo had received speeding tickets, had issued insufficient funds checks, and had been cited for hunting at night. The district court refused to admit the records, finding that they did not demonstrate a likelihood that Toledo would commit a constitutional violation or that he had a propensity for violence.[3] The court also excluded the records under FED. R.

---

[3]    Specifically, the district court found:
While I'm here, I'm putting a ruling on the record for excluding some of the information on, I think, some violations of the))of the officer, Mr. Toledo, which I had excluded during the testimony that the prior records of Officer Toledo do not show any prior violence or aggressive behavior, and although it may be relevant to show that Officer Toledo may not have been hired, it does not show that the policy makers and decision makers should have known of any propensity toward violence, it wouldn't indicate that, and the Fifth Circuit has stated that a single hiring decision which creates a high likelihood that a citizen's constitutional rights would be violated can suffice for Section 1983 liability. Here the record does not show a high likelihood that Toledo would violate anyone's constitutional rights, and there's no proximate cause between the two, and the reasons Toledo may not have been [h]ired do not have anything to do with the excessive force . . . .

EVID. 403.[4]

Plaintiffs, relying solely on this court's statement in *Brown v. Bryan County, Okla.*, 67 F.3d 1174, 1183 (5th Cir. 1995), *cert. granted*, 64 U.S.L.W. 3707 (U.S. Apr. 22, 1996) (No. 95-1100),[5] that a municipality may be liable under § 1983 for a single decision made by a final policy maker, argue that the district court's ruling excluding Toledo's records improperly foreclosed them from arguing that the other defendants were liable because they hired Toledo, a person who "had a history of acting above the law, a law he was sworn to uphold" and who was unfit for law enforcement work.

The records revealed that Toledo had been cited for various non-violent offenses. As a result, the district court did not abuse its discretion in determining that these records did not demonstrate a likelihood that Toledo would use unconstitutionally excessive force or that he had a propensity for violence. Similarly, the district court did not abuse its discretion in finding the probative value of the records on the issue of whether Toledo violated Jody's civil rights outweighed by Rule 403's other considerations.

R. Vol. 14, pp.156-57.

[4] Federal Rule of Evidence 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[5] The Supreme Court heard oral argument in *Bryan County* on November 5, 1996. The Court has yet to issue an opinion.

Moreover, because substantial evidence supports the jury's conclusion that Toledo did not violate Jody's constitutional rights, no basis for liability against the other defendants exists. *See Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1407 (5th Cir. 1995) ("After finding that (1) a rights violation occurred (2) under color of state law, only then do we ask a third and final question:  Who are the state actors responsible for the constitutional violation?"); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S. Ct. 1061, 1066, 117 L. Ed. 2d 261 (1992) ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality:  (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for the violation.").  Any effect the district court's evidentiary ruling may have had on Plaintiffs' allegations of municipal liability is therefore moot.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."), *cert. denied*, 476 U.S. 1154, 106 S. Ct. 2268, 90 L. Ed. 2d 712 (1986).

Plaintiffs last argue that the district court erred in denying

their Rule 60(b)(2) motion for a new trial.[6]  We review a district court's denial of a Rule 60(b) motion for an abuse of discretion. *Government Fin. Servs. v. Peyton Place, Inc.*, 62 F.2d 767, 770 (5th Cir. 1995).  To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.  *Id.* at 771.

On January 18, 1996, more than one month after the verdict, Plaintiffs filed a motion for a new trial based on their discovery of Toledo's military records.  Plaintiffs contend that on November 2, 1995, approximately five weeks before trial, they discovered in Toledo's job application for the Miami Beach Police Department that Toledo had served twenty-five days in the United States Air Force before being discharged for an inability to handle stressful situations.  Toledo's application for the Krotz Springs Police Department did not indicate that Toledo had served in the military. Plaintiffs argue that they "rel[ied] on the employment application with the Krotz Springs Police Department" and "assumed that Officer Toledo had not served in the military."

---

[6]     Under Rule 60(b)(2), a court may relieve a party from a final judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." *Government Fin. Servs. v. Peyton Place, Inc.*, 62 F.3d 767, 770-71 (5th Cir. 1995).  Rule 59(b) provides that "[a]ny motion for a new trial shall be filed no later than 10 days after entry of the judgment."

The district court denied Plaintiffs' Rule 60(b)(2) motion on the grounds that Plaintiffs were not diligent in attempting to obtain the records prior to trial.[7] In particular, the district court noted that Plaintiffs failed to ask Toledo in depositions or interrogatories whether he had served in the military. Under these circumstances, the district court did not abuse its discretion in concluding that Plaintiffs did not exercise due diligence in seeking to obtain Toledo's military records. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 50 (5th Cir. 1992) (noting that because evidence existed at time of trial, "court was entitled to conclude that Petrolite could have discovered it earlier by exercising due diligence").

AFFIRMED.

---

[7] The district court stated:
Plaintiffs did not seek such information until the month before trial. Although plaintiffs assert that they did not know such records existed because Toledo failed to allude to his military history in his previous employment applications, plaintiffs failed to ask Toledo, in any deposition or interrogatory, if he was ever in the military. This is not excusable neglect. It is not the defendant's duty to spontaneously refer to his military history; rather, plaintiffs had the means and the ability to elicit such information through the discovery process. Plaintiffs failed to do such. Therefore, they began trying to obtain these records very late in the process. They ran into difficulties because they failed to get a court order (instead of a subpoena) as required by federal statutory and case law. They did not obtain the records until a month after trial.
R. Vol. 10, p.1290.